# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OMAR AGUILAR, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>WEXFORD HEALTH SOURCES, INC., )<br>SIDDIQUI, )<br>GAIL WALLS, )<br>ANELA CRAIN, )<br>LASHBROOK, )<br>RITZ, )<br>JOHN BALDWIN, )<br>FRANK LAWRENCE, )<br>LOUIS SHICKER, and )<br>ZIMMER, )<br>)<br>Defendants. ) | Case No. 19-cv-510-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Omar Aguilar, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges Defendants were deliberately indifferent to an infection in his kidneys; he asserts claims against them under the Eighth Amendment. Plaintiff seeks monetary damages and has also filed a motion for TRO/Preliminary Injunction. (Doc. 2).

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is

1

legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## **The Complaint**

Plaintiff makes the following allegations in the Complaint: Since January or February 2018, Plaintiff has suffered from pain in the left side of his abdomen. The pain keeps him from sleeping and causes him headaches and back pain. (*Id*. at p. 5). Plaintiff also has burning sensations and swelling in his hands and feet. (*Id*.). Plaintiff has seen Dr. Siddiqui on at least six different occasions between February 2018 and April 2019 and explained to him that the current pain medication is not helping, but Dr. Siddiqui refuses to provide him with any medication stronger than Tylenol, ibuprofen, and other over the counter pain relievers because Wexford Health Sources, Inc. ("Wexford") will not authorize stronger pain medication due to cost concerns. (Doc. 1, pp. 4-5, 6,15).

Plaintiff complained that his left side hurt near his kidneys, that it hurt when he urinated, and that his urine was strong smelling. (Doc. 1, p. 12). He was initially diagnosed with a urinary tract infection ("UTI") by Dr. Siddiqui and Nurse Practitioner Zimmer ("NP") and provided antibiotics for the infection. (*Id*. at pp. 12, 17). Although Plaintiff was later told that the infection was no longer showing up on tests, he continued to suffer pain in his kidneys, pain while urinating, and strong-smelling urine. (*Id*.). Plaintiff continued to suffer from pain after the antibiotic treatment, but Dr. Siddiqui, NP Zimmer, Crain, Dr. Ritz, and Walls began ignoring his complaints of pain and refused to see him or send him to a specialist. (*Id*. at p. 17). They believed he was lying about his pain and sent him to mental health staff for anxiety. (*Id*. at pp. 17-18). As a result, Plaintiff continued to suffer pain in his left side due to lack of treatment. He was eventually

diagnosed with pyelonephritis (a kidney infection). (*Id*. at p. 18). Even after the diagnosis, he was denied a request to be treated by a specialist. (*Id*.). Dr. Siddiqui, Dr. Ritz, NP Zimmer, Walls, and Crain failed to address Plaintiff's condition in a timely fashion and he eventually developed prostatitis, which can result from a bacterial infection that spreads to the prostate. (*Id.* at pp. 19, 21). They continued with an ineffective course of treatment and, as a result, Plaintiff continues to suffer from pain in his left side and burning and swelling in his hands and feet. (*Id*. at pp. 19-20). Due to Wexford's policy of treating inmates like a nuisance and liars, the medical staff assumed he was lying. (*Id*. at pp. 12-13). Plaintiff suffered severe emotional distress due to Defendants' actions and was referred to mental health professionals at the prison by healthcare staff.

Plaintiff wrote letters and grievances to John Baldwin, Dr. Louis Shicker, Lashbrook, and Gail Walls, but they refused to investigate his claims of inadequate care. (*Id*. at pp. 8-10, 15-16). They were also aware of systemic problems with the healthcare unit through Plaintiff's and other inmate's grievances and lawsuits, but they ignored the complaints. (*Id*. at pp. 9-10). Plaintiff notified Dr. Siddiqui, Gail Walls, Angela Crain, Dr. Ritz, Dr. Shicker, Baldwin, Lashbrook, Frank Lawrence, Hillerman, and NP Zimmer of the pain in his left side on numerous occasions. (*Id*. at p. 16).

Plaintiff further alleges that the inappropriate care that he received for his kidney infection is a result of several other Wexford policies. Wexford has a policy and practice of understaffing the healthcare unit, providing improper training, and of instructing its employees to view inmate's claims as false. As a result, a number of Plaintiff's sick call requests were ignored and when he did finally see the doctor, his complaints of pain were ignored because they believed he was lying. (*Id*. at pp. 4, 7). Plaintiff also alleges that improper training led to misdiagnosis of his condition as a UTI. (*Id*. at pp. 12-13). Wexford also has a policy of cancelling call passes when the

institution is on lockdown which prevented Plaintiff from receiving care on numerous occasions. (*Id*. at pp. 22-23). He also alleges that Baldwin, Lashbrook, Lawrence, and Shicker were aware of systemic problems with the healthcare at Menard, including overcrowding at Menard and understaffing of the healthcare unit but failed to remedy the issues, causing Plaintiff to be denied access to the healthcare unit when his call passes were cancelled. (*Id*. at pp. 27-28).

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts:

> **Count 1:** **Dr. Siddiqui, Gail Walls, Angela Crain, Lashbrook, Dr. Ritz, John Baldwin, Frank Lawrence, Dr. Louis Shicker, and NP Zimmer were deliberately indifferent in the treatment of Plaintiff's kidney infection in violation of the Eighth Amendment.**
>
> **Count 2:** **Wexford Health Sources, Inc. was deliberately indifferent in maintaining policies that led to Plaintiff not receiving timely, appropriate care in violation of the Eighth Amendment.**
>
> **Count 3:** **Dr. Siddiqui, Gail Walls, Angela Crain, Lashbrook, Dr. Ritz, John Baldwin, Frank Lawrence, Dr. Louis Shicker, NP Zimmer, and Wexford's failure to provide him with appropriate care amounted to intentional infliction of emotional distress.**
>
> **Count 4:** **Baldwin, Lashbrook, Lawrence, Shicker, and Wexford were deliberately indifferent to overcrowding at Menard which caused delays in Plaintiff's treatment in violation of the Eighth Amendment.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

4

## Discussion

### Count 1

Plaintiff alleges that he informed the Defendants through sick call slips, letters, and grievances that he was suffering from pain in his left side and burning and swelling in his hands and feet. He also alleges that Defendants delayed the diagnosis of a kidney infection and continued with an ineffective course of treatment for the infection, causing him to develop prostatitis and to suffer from continual pain. These allegations state a viable claim for deliberate indifference. See, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement); *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective).

To the extent Plaintiff alleges that administrative officials were informed of his medical condition in grievances and continued to ignore his pain, Plaintiff also states a claim against those individuals. See *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (an official may be liable when he "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it") (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). Plaintiff alleges that he informed the administrative officials at Menard and IDOC, including John Baldwin, Lashbrook, Lawrence, Shicker, and Walls, about his lack of care and the systemic problems with the healthcare unit at Menard. Count 1 will therefore proceed against Dr. Siddiqui, Gail Walls, Angela Crain, Lashbrook, Dr. Ritz, John Baldwin, Frank Lawrence, Dr. Louis Shicker, and NP Zimmer.

**Count 2**

A corporation can be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff has alleged that Wexford maintains a number of policies that led to the delay and ineffective treatment that he experienced. This is sufficient to state a claim against Wexford at this early stage, and Plaintiff's deliberate indifference claim against Wexford will be allowed to proceed.

Plaintiff also alleges that Wexford's healthcare unit was deliberately indifferent to his care. (Doc. 1, p. 5, 6, 12). To the extent that Plaintiff alleges that Wexford is liable for the acts of these employees, the Court notes that a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (*quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Section 1983 does not authorize *respondeat superior* or supervisory liability; it creates liability only for a defendant's personal acts or decisions. *Id. Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Thus, Plaintiff fails to state a claim against Wexford for supervisory liability.

**Count 3**

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a

high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker,* 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill.1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.,* 610 N.E.2d 745, 749 (Ill.App.1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker,* 256 F.3d at 490.

Plaintiff has arguably alleged each of the components of this state-law claim. He alleges that Defendants intentionally provided him with inappropriate medical care for his severe kidney pain for over a year. He also alleges that Defendants knew their conduct caused severe emotional distress as Plaintiff was referred to mental health professionals to deal with his mental distress caused by his severe pain. (Doc. 1, p. 8). Therefore, Count 3 will proceed against Dr. Siddiqui, Gail Walls, Angela Crain, Lashbrook, Dr. Ritz, John Baldwin, Frank Lawrence, Dr. Shicker, NP Zimmer, and Wexford.

**Count 4**

The Eighth Amendment sets a "minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve 'the wanton and unnecessary infliction of pain.'" *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Prison overcrowding is not a *per se* constitutional violation. *See Rhodes* 452 U.S. at 348 (1981). "Accordingly, an inmate's constitutional challenge to prison conditions requires a two-part examination." *Townsend* 522 F.3d at 773. First, Plaintiff must establish that the prison was overcrowded, and that the overcrowding led to intolerable conditions, such as the deprivation of medical care, food, sanitation, or an increase in violence. *Id.; see also*

7

*French v. Owens,* 777 F.2d 1250, 1253 (7th Cir. 1985). Additionally, Plaintiff must demonstrate that the defendant acted with deliberate indifference with respect to the conditions. *Townsend,* 522 F.3d at 773 (quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)).

Plaintiff alleges that there was overcrowding at Menard and understaffing of Menard's healthcare unit such that there were not enough healthcare staff for the number of inmates. As a result, Plaintiff's call passes were denied and/or cancelled because there were too many inmates scheduled to be seen in the healthcare unit. (Doc. 1, pp. 27-28). Plaintiff also alleges that Baldwin, Lashbrook, Lawrence, and Shicker were aware of these systemic problems through grievances written by Plaintiff and other inmates, lawsuits, and reports. Under similar circumstances, the Seventh Circuit has found that prison administrators were "well aware of multiple grievances from inmates regarding small cells" based on "numerous past lawsuits, including one specifically describing and ordering a remedial plan for overcrowding, small cells, and lack of adequate medical care...." *Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (citing *Lightfoot v. Walker*, 486 F. Supp. 504, 511 (C.D. Ill. 1980)); *Munson v. Hulick*, 2010 WL 2698279 (S.D. Ill. July 7, 2010) (grievances filed by Plaintiff and other inmates were deemed sufficient at screening to put prison officials on notice of unconstitutional conditions where Menard prisoner challenged 40' cells that held 2 inmates for 21-22 hours per day)). Thus, Plaintiff states a claim for deliberate indifference in Count 4 against Baldwin, Lashbrook, Lawrence, Shicker. However, Count 4 will be **DISMISSED without prejudice** as to Wexford as there are no allegations that they are involved in housing decisions at Menard.[2]

---

[2] To the extent Plaintiff alleges understaffing of the healthcare unit, that claim against Wexford is included in Count 2 against Wexford.

## TRO/Preliminary Injunction

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined, and it may last no more than fourteen (14) days. *See* Fed. R. Civ. P. 65(b)(2). A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, a plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that he will suffer irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Without expressing any opinion on the merits of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard.* Although Plaintiff alleges that he is still suffering from pyelonephritis and prostatitis, he indicates in his Complaint that he has received antibiotics for the infections. His most recent

grievance indicates that he was seen by a urologist in October 2018 and prescribed antibiotics. (Doc. 1-1, p. 20). He also had a CT scan in February 2019 and was approved for further testing. (*Id.*). As it appears that Plaintiff is currently receiving some care for his infection, a TRO is not warranted and Plaintiff's request for that relief is **DENIED**.

That said, the Court does find Plaintiff's allegations that he has suffered from a kidney infection for over a year to be concerning. Accordingly, Defendants Lawrence, Baldwin, and Wexford Health Sources, Inc. are **DIRECTED** to respond to the motion for preliminary injunction (Doc. 2) by **July 26, 2019.**

### Motion for Counsel

In his Motion for Counsel (Doc. 3), Plaintiff indicates that he has sent letters to several attorneys but has not received any responses. Plaintiff claims that English is his second language and he had help in drafting his Complaint. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[3] Therefore, Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice. Plaintiff may renew his request for the recruitment of counsel at a later date.

### Disposition

**IT IS HEREBY ORDERED** that **Count 1** shall proceed against Dr. Siddiqui, Gail Walls, Angela Crain, Lashbrook, Dr. Ritz, John Baldwin, Frank Lawrence, Dr. Louis Shicker, and NP Zimmer, **Count 2** shall proceed against Wexford, **Count 3** shall proceed against Dr. Siddiqui, Gail

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

Walls, Angela Crain, Lashbrook, Dr. Ritz, John Baldwin, Frank Lawrence, Dr. Louis Shicker, NP Zimmer, and Wexford and **Count 4** shall proceed against Baldwin, Lashbrook, Lawrence, Shicker.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Dr. Siddiqui, Gail Walls, Angela Crain, Lashbrook, Dr. Ritz, John Baldwin, Frank Lawrence, Dr. Louis Shicker, NP Zimmer, and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 7/12/2019**

*/s/ Staci M. Yandle*
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions,

to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature.  **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**